Approved: _____
          JUN XIANG / REBECCA T. DELL
          Assistant United States Attorneys

Before:   THE HONORABLE ROBERT W. LEHRBURGER
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - x
                                 :      **21 MAG 2350**
                                 :
UNITED STATES OF AMERICA         :      SEALED COMPLAINT
                                 :
    - v. -                       :      Violations of
                                 :      18 U.S.C. §§ 1951,
ANDERSON GARCIA,                 :      924(c), and 2
                                 :
               Defendant.        :      COUNTY OF OFFENSE:
                                 :      BRONX
- - - - - - - - - - - - - - - - x


SOUTHERN DISTRICT OF NEW YORK, ss.:

        KIERAN KEENAGHAN, being duly sworn, deposes and says
that he is a Detective with the New York City Police Department
and a Task Force Officer with the Bureau of Alcohol, Tobacco,
Firearms and Explosives, and charges as follows:

                          COUNT ONE
            (Conspiracy to Commit Hobbs Act Robbery)

        1.   In or about August 2020, in the Southern District
of New York and elsewhere, ANDERSON GARCIA, the defendant,
knowingly did conspire with others known and unknown, to commit
robbery, as that term is defined in Title 18, United States Code,
Section 1951(b)(1), and would and did thereby obstruct, delay, and
affect commerce and the movement of articles and commodities in
commerce, as that term is defined in Title 18, United States Code,
Section 1951(b)(3), to wit, GARCIA and others conspired to rob a
drug dealer in the Bronx, New York.

        (Title 18, United States Code, Section 1951.)


1

COUNT TWO
(Hobbs Act Robbery)

2.   On or about August 16, 2020, in the Southern
District of New York and elsewhere, ANDERSON GARCIA, the defendant,
knowingly did commit robbery, as that term is defined in Title 18,
United States Code, Section 1951(b)(1), and did thereby obstruct,
delay, and affect commerce and the movement of articles and
commodities in commerce, as that term is defined in Title 18,
United States Code, Section 1951(b)(3), to wit, GARCIA and others
committed a gunpoint home-invasion robbery of a drug dealer in the
Bronx, New York, and stole, among other items, drugs and the
proceeds of drug trafficking.

(Title 18, United States Code, Sections 1951 and 2.)

COUNT THREE
(Firearms Use, Carrying, and Possessing)

3.   On or about August 16, 2020, in the Southern
District of New York and elsewhere, ANDERSON GARCIA, the defendant,
during and in relation to a crime of violence for which he may be
prosecuted in a court of the United States, namely, the robbery
charged in Count Two of this Complaint, knowingly did use and carry
a firearm, and, in furtherance of such crime, did possess a firearm,
and did aid and abet the use, carrying, and possession of a firearm,
which was brandished.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i), (ii), and 2.)

The bases for my knowledge and the foregoing charge
are, in part, as follows:

4.   I am a Detective with the New York City Police
Department ("NYPD") and a Task Force Officer with the Bureau of
Alcohol, Tobacco, Firearms and Explosives ("ATF")/NYPD Joint
Robbery Task Force, SPARTA Group.  I have been personally involved
in the investigation of this matter.  This affidavit is based upon
my investigation, my conversations with law enforcement agents and
others, and my examination of reports and records.  Because this
affidavit is being submitted for the limited purpose of
establishing probable cause, it does not include all the facts
that I have learned during the course of my investigation.  Where
the contents of documents and the actions, statements, and
conversations of others are reported herein, they are reported in
substance and in part, except where otherwise indicated.

2

5.   For the reasons set forth below, there is probable cause to believe that ANDERSON GARCIA, the defendant, participated in a home-invasion gunpoint robbery in the Bronx, New York on or about August 16, 2020 (the "Robbery").  As discussed below, there is probable cause to believe that the victim of the gunpoint robbery (the "Victim") was a drug trafficker and that GARCIA and the other participants in the Robbery obtained drugs and drug proceeds from the Robbery.

<u>The Robbery</u>

6.   Based   on   my   conversations   with   other   law enforcement officers, my review of law enforcement reports, and my review of video surveillance, I have learned, among other things, the following:

a.   At the time of the charged conduct, the Victim lived in an apartment unit on the eleventh floor (the "Apartment") of an apartment building in the Bronx, New York ("Building-1").

b.   On or about August 16, 2020, at approximately 5:45 a.m.,[1] a man--later identified to be ANDERSON GARCIA, the defendant--walked toward the Apartment and tried to open the door of the unit next to the Apartment, unsuccessfully.[2]  GARCIA then left.  Video surveillance shows that GARCIA was wearing a light-colored surgical mask, a gray hooded sweatshirt with off-white cursive lettering and a distinct red emblem on the left breast,

---

[1]   Based on my involvement in this investigation, I have learned that the timestamps on the video surveillance from this camera are incorrect.  I calculated the approximate difference between the time reflected on the timestamps and the real time by comparing the timestamp of the surveillance showing police arriving at the Apartment (as described below) and the time reflected in law enforcement records indicating when police arrived.

[2]   The door to the Apartment is just off-camera from the camera named "Camera 12" and, based on my conversations with other law enforcement officers, is immediately next to the door shown on the bottom-left corner of the footage.

and sneakers with white trim around the sole.  A screenshot of the
video surveillance appears below.



(GARCIA approaching the Apartment)

      c.  The same day, at approximately 6:19 a.m.,
GARCIA and another individual ("CC-1") returned to the eleventh
floor hallway of Building-1 and hid themselves in the near-side

eleventh floor stairwell.[3]  A screenshot of the video surveillance
appears below.



(GARCIA entering the near-side stairwell, with CC-1 following)

          d.    The same day, at approximately 6:31 a.m., the
Victim and a female companion (the "Woman") returned to the
Apartment and went inside.  When the Victim and the Woman entered
the apartment, GARCIA and CC-1 attempted unsuccessfully to follow
the Victim and the Woman inside the Apartment.  A screenshot of
the video surveillance, which shows GARCIA running toward the

---

[3]    Based on my involvement in this investigation and my
conversations with other law enforcement officers, I know that
there are at least two stairwells opening to the eleventh floor
hallway of Building-1: one stairwell is nearer to the Apartment
and the camera designated "Camera 12" and the other is on the far
end of the hallway.  In this Complaint, the stairwell closer to
Camera 12 is referred to as the "near-side stairwell" and the
stairwell on the far end is referred to as the "far-side stairwell."

Apartment after the Victim and the Woman have entered, appears
below.



(GARCIA attempting to follow the Victim and the Woman)

e.    The same day, at approximately 6:37 a.m.,
GARCIA and CC-1 appeared to successfully enter the Apartment.  At
approximately 6:44 a.m., two other men ("CC-2" and "CC-3") emerged
from the far-side eleventh floor stairwell and also appeared to
enter the Apartment.  None of the four individuals--GARCIA, CC-1,
CC-2, or CC-3--carried any parcels with them when they approached
the Apartment.  A screenshot of the video surveillance, which shows
GARCIA approaching the Apartment, appears below.



(GARCIA approaching the Apartment)

    f. The same day at approximately 6:45 a.m., GARCIA, CC-2, and CC-3 emerged from the Apartment, split up, and entered the near-side and far-side eleventh floor stairwells. Seconds later, CC-1 emerged from the Apartment carrying what appeared to be several parcels.  A screenshot of the video surveillance, which shows CC-1 carrying the parcels, appears below.



(CC-1 carrying parcels from the Apartment)

<u>The Victim's Statement and the Search of the Apartment</u>

    7. Based on my conversations with other law enforcement officers, my review of law enforcement reports, and my review of video surveillance, I have learned, among other things, the following:

    a. On or about August 16, 2020, at approximately 6:52 a.m., an individual--later identified to be the Woman--called 911 to report that an assault had occurred inside the Apartment. When police officers responded to the scene, the Woman stated, in substance and in part, that the Victim had been assaulted and needed medical attention.  The Woman invited the officers inside the Apartment.  The Woman further stated, in substance and in part, that she had hidden inside a bathroom when an altercation occurred between the Victim and the persons who entered the Apartment.

    b. Upon entering the Apartment, officers saw a substantial amount of blood, as well as several rounds of ammunition (the "Kitchen Ammunition"), on the kitchen floor.  The trail of blood led to the living room, where officers found the Victim lying on the ground near large plastic bags of a substance that appeared to be marijuana.  The Victim was bleeding from a

substantial head injury.  Upon conducting a protective sweep of the Apartment for firearms and other individuals, officers observed a plastic bag containing a substance that appeared to be cocaine base ("crack cocaine") in the Apartment, as well as other evidence of the possession and distribution of controlled substances.

        c.  In light of the Victim's injuries, the Victim was taken to the hospital for treatment.  At or around the time that the Victim was seeking and obtaining medical treatment, the Victim told law enforcement, in substance and in part, that he had been struck repeatedly on the head with a firearm.

        d.  On or about August 16, 2020, at or about the same time that the Victim was receiving medical attention, law enforcement obtained a warrant from a judge of the New York State Criminal Court to search the Apartment for, among other things, controlled substances, paraphernalia relating to the possession and distribution of controlled substances, firearms and ammunition, and evidence relating to the ownership and control of the Apartment.

        e.  Law enforcement searched the Apartment pursuant to the warrant and seized, among other things, the following: several rounds of ammunition inside a bedroom closet (that were of a different make and caliber than the Kitchen Ammunition), parcels containing what appeared to be marijuana, bags containing what appeared to be crack cocaine, pill containers that contained what appeared to be other drugs, and various drug paraphernalia, including approximately seven scales.  A photograph

of drugs and paraphernalia recovered from the Apartment appears below.



    f.    Based on my review of laboratory records, I have learned that the apparent crack cocaine recovered from the Apartment tested positive for crack cocaine and weighed in excess of approximately 100 grams in the aggregate, and the contents of certain pill containers recovered from the Apartment tested positive for methamphetamine and oxycodone.

    8.    Based on my training and experience, as well as the drugs and drug paraphernalia recovered from the Apartment, I believe that the Victim used the Apartment to engage in drug trafficking.

<u>Identification of ANDERSON GARCIA</u>

    9.    Based on my conversations with other law enforcement officers, my review of law enforcement reports, and my review of video surveillance, I have learned, among other things, the following:

    a.    As discussed above, at paragraph 6(c), on or about August 16, 2020, at approximately 6:19 a.m., GARCIA entered the near-side eleventh story stairwell, followed seconds later by CC-1.   Video surveillance shows that, when CC-1 entered the stairwell, CC-1 was carrying a white, take-out style plastic bag with dark marking (the "Bag") in his left hand.   A screenshot of

the video surveillance, which shows CC-1 holding the Bag while entering the stairwell, appears below.



(CC-1 entering the stairwell carrying the Bag)

b.   A few minutes later, at approximately 6:26 a.m., GARCIA and CC-1 exited the stairwell without the Bag.

10.   Based on my review of law enforcement records, including a report prepared by an NYPD Fingerprint Examiner, I have learned, among other things, the following:

a.   A white take-out style plastic bag with the purple writing "Thank you," which I believe to be the Bag, was recovered from the eleventh floor stairwell by police officers on or about August 17, 2020.

b.   A latent print was recovered from the Bag ("the Latent Print").

c.   On or about October 9, 2014, ANDERSON GARCIA, the defendant, was arrested by the NYPD and his fingerprints were taken incident to that arrest (the "Garcia Print").

d.   An NYPD Fingerprint Examiner compared the Latent Print with the Garcia Print and determined that the Latent Print and Garcia Print were made by the same person, namely, GARCIA.

11.   Based on my training and experience, I know that individuals who engage in home-invasion robberies often "case"-- that is, engage in physical surveillance--of the location where a robbery is planned in order to prepare to commit the robbery.

12.   In the course of the investigation, I and other law
enforcement officers have reviewed video surveillance of the area
around Building-1 during the time periods before, during and after
the Robbery.  Based on that review, I have learned, among other
things, the following:

a.   On or about August 16, 2020, at approximately
5:30 a.m.--that is, approximately one hour prior to the Robbery--
ANDERSON GARCIA, the defendant, stood near the entrance of the
apartment building directly adjoining Building-1 ("Building-2").

b.   In the video surveillance from Building-2,
GARCIA is wearing the same clothing as the surveillance from
Building-1--that is, a light-colored surgical mask, a gray hooded
sweatshirt with off-white cursive lettering and a small red emblem,
and sneakers with white trim around the sole.  In this surveillance,
GARCIA's mask is down, so his entire face is visible.  Screenshots
of the video surveillance appear below.



(GARCIA in front of Building-2)



(GARCIA in front of Building-2)

        13.   Based on my review of criminal history records of
ANDERSON GARCIA, the defendant, I have learned, among other things,
that on or about May 3, 2018, GARCIA was arrested by the NYPD and
an arrest photograph was taken (the "Arrest Photograph").  I have
compared the video surveillance from Building-1 and Building-2
capturing the person described above as GARCIA with the Arrest
Photograph, and I believe that the individual depicted in the video
surveillance appears to be the same person as the person in the
Arrest Photograph, that is, GARCIA.

WHEREFORE, I respectfully request that a warrant be issued for the arrest of ANDERSON GARCIA, the defendant, and that he be arrested, and imprisoned or bailed, as the case may be.

S/ by the Court with permission
_____
KIERAN KEENAGHAN
Detective
New York City Police Department


Sworn to me through the transmission of this
Affidavit by reliable electronic means, pursuant to
Federal Rules of Criminal Procedure 4.1 and 41(d)(3), this
1st day of March, 2021,


_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK